UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RONALD HALL                                                                        PLAINTIFF

V.                                                          CIVIL ACTION NO. 5:19-CV-25-DPJ-MTP

NATCHEZ-ADAMS COUNTY AIRPORT                                    DEFENDANTS
COMMISSION, ET AL.

ORDER

Plaintiff Ronald Hall—a public employee—says Defendants fired him because he spoke

out about their allegedly unethical and illegal conduct.  Hall brings a First Amendment

retaliation claim and various state-law claims against Defendants Natchez-Adams County

Airport Commission and airport commissioners David Gaude, Dr. Thomas Borum, and Gary

Holloway.  Defendants filed a Motion for Summary Judgment [70] on all of Hall's claims.  For

the following reasons, the motion is granted as to Hall's state-law wrongful-termination and

breach-of-contract claims but is otherwise denied.

I.      Background

In July 2017, Natchez-Adams County Airport hired Plaintiff Ronald Hall as Director of

Aviation to manage its airport.  Am. Compl. [1-1] ¶ 11; Airport Dep. [70-3] at 56 (identifying

Hall's job title as Director of Aviation).  Approximately two months later, in August 2017, Hall

discovered that Defendants Holloway, Gaude, and Borum, who were members on the Natchez-

Adams County Airport Commission, were contracting with the airport for personal fuel and

hangar space at rates the Commissioners themselves set.  Am. Compl. [1-1] ¶ 14; Hall Dep. [10-

1] at 34–37.

Concerned by this behavior, Hall anonymously emailed the Mississippi Ethics

Commission in August 2017 to ask whether the contracts were "legal."  *Id.* at 36–37.  He also

expressed his concerns to the Adams County Board of Supervisors, which likewise contacted the Ethics Commission. *Id.* at 39.  Eventually, the Ethics Commission issued an advisory opinion concluding that the Commissioners had violated section 109 of the Mississippi Constitution and its statutory parallel, Mississippi Code section 25-4-105(2).  Advisory Opinion [70-7] at 1. Those provisions "prohibit a member of a public board from having any direct or indirect interest in a contract which is funded or otherwise authorized by that board during his or her term or for one year thereafter." *Id.* at 3.

Before the Commissioners learned about Hall's August 2017 email, they began questioning his job performance, primarily focusing on his spending decisions. *See, e.g.*, Nov. 1, 2017 Minutes [70-5] at 1–2.  They therefore capped his spending authority, but their concerns continued along with other performance issues they discussed during a May 17, 2018 meeting. *See* May 17, 2018 Minutes [70-6] at 3–4; Airport Dep. [70-3] at 10–17.  Later that same month, on May 29, 2018, Hall claims the Commissioners learned about the Advisory Opinion.  Hall Dep. [70-1] at 43.  While the Commissioners corrected the violations, they also decided to terminate Hall's employment at about that same time.  Airport Dep. [70-3] at 11, 12.

Feeling aggrieved, Hall sued Adams County, the Natchez-Adams County Airport Commission, Borum, Gaude, and Holloway; Holloway was sued individually and in his official capacity.  The suit alleges First Amendment retaliation under 42 U.S. § 1983; state-law wrongful termination under *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993); a free-speech violation under the Mississippi constitution; violation of the Mississippi Whistleblower Protection Act; and breach of contract.  Previously, the Court granted Adams County's summary-judgment motion [43] and dismissed it as a defendant.  Order [45].  The remaining

Defendants filed a motion for summary judgment [70] on all claims.  The motion has been fully briefed, and the Court possesses both personal and subject-matter jurisdiction.

II.      Summary-Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

    A.     First Amendment Retaliation[1]

Hall asserts a First Amendment retaliation claim under 42 U.S.C. § 1983.  Am. Compl.

[1-1] ¶ 32.  In general, Hall says Defendants terminated his employment because he emailed the

Ethics Commission to ask whether Defendants' personal fuel and hangar contracts were legal.

*Id.* ¶ 29–32.  There is no dispute Hall made that inquiry, but Defendants contend that it was not

protected speech because Hall spoke as part of his official job duties.  Defs.' Mem. [71] at 13–

14.

    It is well-recognized that "government employees are not stripped of their First

Amendment right to freedom of speech by virtue of their employment."  *Hurst v. Lee Cnty.*, 764

F.3d 480, 484 (5th Cir. 2014).  "Rather, some speech, even if it 'concerns information related to

or learned through public employment,' deserves protection because '[g]overnment employees

are often in the best position to know what ails the agencies for which they work.'"  *Escamilla v.

Elliott*, 816 F. App'x 919, 925 (5th Cir. 2020) (quoting *Lane v. Franks*, 573 U.S. 228, 236

(2014)).

    To establish a prima facie case of First Amendment retaliation, a plaintiff must show:

"(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public

concern; (3) his interest in the speech outweighs the government's interest in the efficient

---

[1] Hall argues that a hearing with the Mississippi Department of Employment Security (MDES) has "a preclusive effect concerning [his] First Amendment and *McArn* claims."  Pl.'s Mem. [75] at 12–13; *see also* MDES Decision [74-9].  "In Mississippi, administrative decisions are given preclusive effect."  *Cox v. DeSoto Cnty.*, 564 F.3d 745, 748 (5th Cir. 2009) (citing *Smith v. Univ. of Miss.*, 797 So. 2d 956, 963 (Miss. 2001)).  But based on the MDES decision Hall submitted as an exhibit, the ALJ did not decide any issues Defendants now dispute in their summary-judgment motion as to the First Amendment claim, and the state-law claims fail for reasons unrelated to the ALJ's findings.

provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015). Defendants' summary-judgment motion focuses on the second element of Hall's prima facie case, arguing that he spoke as an employee—not a citizen—when he emailed the Ethics Commission on a matter of public concern. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008) (exploring citizen speech).[2]

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The Supreme Court has never developed a "comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 424. Rather, "[t]he proper inquiry is a practical one," *id.*, and "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties," *Lane*, 573 U.S. at 240. Though this question "involves the consideration of factual circumstances surrounding the speech at issue, the question whether [Hall's] speech is entitled to protection is a legal conclusion properly decided at summary judgment." *Charles v. Grief*, 522 F.3d 508, 513 n.17 (5th Cir. 2008).

Here, Hall primarily argues that emailing the Ethics Commission was not within his ordinary duties because (1) nothing in his job description required him to monitor the Commissioners or contact the Ethics Commission and (2) the Ethics Commission was outside his chain of command. *See* Pl.'s Mem. [75] at 15.

---

[2] If a plaintiff spoke as a citizen, the next question would be whether the defendant possessed "an adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Cebollos*, 547 U.S. 410, 421 (2006). Defendants did not address this issue.

Starting with his job description, Hall identifies two documents that discuss the Director of Aviation position.  The first is the Airport Commission's job posting when Hall applied for the job, *see* Job Posting [74-1], and the second is a memorandum from Hall's predecessor, Bob Hawk, outlining the Director of Aviation's job duties, Hawk Mem. [70-2].  Hall says the posted description reflects his job duties whereas the Hawk memorandum was merely advice.  Hall Dep. [70-1] at 45.  Consistent with that, the Hawk memorandum notes that it provides "guidance . . . until you have established your own method and procedures."  Hawk Mem. [70-2] at 2.

Regardless, neither job description suggests that communicating with the Ethics Commission was "ordinarily within the scope of [Hall's] duties."  *Lane*, 573 U.S. at 240.  First, the job posting states that the director "reports directly to the Airport Commission," "serves as liaison with outside counsel for airport-related legal matters," and "updates the Airport Commission concerning legal concerns."  Job Posting [74-1] at 1.  The description makes no reference to communications with outside agencies, much less the Ethics Commission.  Nor does it require the Director of Aviation to monitor the Commissioners or report suspected ethical violations, stating instead that the director must "ensure[ ] compliance with FAA *safety* rules and regulations."  *Id.* (emphasis added).  Hall's email to the Ethics Commission did not involve an FAA safety rule or regulation.

The Hawk memorandum is similar, if not more direct.  It says the Director of Aviation is "not authorize[d] . . . to by-pass the Airport Commissioners by making contacts with any outside governmental agency be it county/city or state regarding any ideas or future plans for the airport. The Airport Commissioners, is [sic] your direct line of supervision."  Hawk Mem. [70-2] at 2.  And like the job posting, nothing in the Hawk memorandum created a duty to monitor the Commissioners or communicate with the Ethics Commission.  While these job descriptions "are

6

not dispositive," they are "instructive."  *Gibson v. Kilpatrick*, 773 F.3d 661, 667, 671 (5th Cir. 2014).  And they both suggest that Hall's ordinary duties did not involve direct communication with the Ethics Commission.

In addition, the Ethics Commission was not within Hall's chain of command.  When "a public employee takes his job concerns to persons outside the workplace in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen."  *Davis*, 518 F.3d at 313; *cf. Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) (holding employee's memo to external agency was within his job duties because it was "focus[ed] on his daily operations," and he needed the information "so that he could properly execute his duties").  That Hall emailed the Ethics Commission anonymously, further suggests that the inquiry was not part of his ordinary duties.  Hall Dep. [70-1] at 36.

Defendants never fully address the job descriptions or the chain-of-command argument, though they note that job descriptions are not dispositive.  Defs.' Reply [77] at 6 (citing *Escamilla*, 816 F. App'x at 925).  Instead, Defendants primarily say Hall admitted that emailing the Ethics Commission fell within his job duties.  That argument flows from questions during Hall's deposition that addressed an averment from his Amended Complaint:

> Q.    Take a look at Paragraph 14 on page 3 [of the Amended Complaint].  As I understand it, it says "Hall, during his duties as a manager, discovered a potential ethics and criminal violation."  It's just an ethics law violation and not a criminal law violation?
>
> A.    No, it's not criminal.
>
> Q.    But you considered it your duty to clarify and report that to the Ethics Commission?
>
> A.    I made an inquiry with the Ethics Commission.  I reported it to the Board of Supervisors.

Q.      You considered that your duty?

A.      Yes.

Q.      As an employee and airport manager of the Natchez-Adams County
        Airport?

A.      The first duty of any airport director is compliance of federal and state and
        local laws, yes.  There's reasons for them.

Q.      This isn't some kind of personal beef or some kind of I'm trying to
        get leverage with the board, is it?

A.      No.

Q.      You're doing your job?

A.      Yes.

Hall Dep. [70-1] at 38–39.

    This testimony is factually ambiguous and legally insufficient to grant summary

judgment.  To begin, the Court must view the summary-judgment record in the light most

favorable to Hall.  In that light, Hall was careful to distinguish between his "inquiry with the

Ethics Commission" and his "report[ ]" to the Board of Supervisors.  *Id.* at 39.  After testifying

that he "reported it to the Board of Supervisors," the very next question was whether he

considered "*that* [his] duty," i.e., reporting to the Board of Supervisors.  *Id.* (emphasis added).

Thus, when the testimony is viewed under the Rule 56 standard, it is not apparent that Hall

agreed his ordinary job duties included emailing the Ethics Commission.

    Even assuming the testimony demonstrated a general duty to report ethical concerns, that

does not establish that doing so constituted Hall's "ordinary" duties.  "Under *Lane*, a general job-

imposed obligation to detect and prevent wrongdoing does not qualify as an employee's 'official

duty' because 'such broad [obligations] fail to describe with sufficient detail the day-to-day

8

duties of a public employee's job." *Anderson v. Valdez*, 913 F.3d 472, 477 (5th Cir.) (quoting *Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016) (rejecting argument that "embedded within [police officer's] general duty to 'detect and prevent crime,' is the specific obligation to cooperate with outside law enforcement agencies regarding investigations into public corruption"), *reh'g denied*, 916 F.3d 404 (5th Cir. 2019)).[3]

In sum, Hall has offered competent summary-judgment evidence demonstrating that he spoke as a citizen when he contacted the Ethics Commission.  Defendants have not met their burden under Rule 56.[4]

B.     Qualified Immunity

Individual Defendants Gaude, Borum, and Holloway say they are entitled to qualified immunity on Hall's First Amendment claims.  Qualified immunity shields government officials from individual liability "so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  To overcome qualified immunity, a plaintiff must show: "(1) the official violated a statutory or constitutional right; and

---

[3] Hall argues—without direct authority—that his deposition testimony is irrelevant because the citizen-verses-employee-speech test is objective, not subjective.  Defendants did not dispute his legal assertion in reply, but the Court has not independently confirmed it.

[4] Defendants offer other arguments for finding that Hall spoke as an employee, but the Court has not specifically addressed each one.  For example, they note that Hall was not under subpoena, made no "formal complaint," and there was no resulting investigation.  Defs.' Mem. [71] at 16.  While those facts were present in other First Amendment retaliation cases, freedom of speech covers a broader range of conduct.  *See, e.g.*, *Anderson*, 845 F.3d at 478 (finding that ethics complaint constituted protected speech).  Similarly, Defendants frequently observe that they did not commit a crime.  *See, e.g.*, Defs.' Reply [77] at 8.  Perhaps, but the Advisory Opinion stated that they violated the Mississippi Constitution and the Mississippi Code.  *See* Advisory Opinion [70-7] at 1.  It remains unclear how the distinction between violating a criminal statute and engaging in unethical conduct that violates the state constitution and other statutes advances Defendants' argument that Hall spoke as an employee.

(2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

In their opening memorandum, Defendants argue that qualified immunity applies because they never violated Hall's constitutional rights. Defs.' Mem. [71] at 19. But as discussed, Hall overcomes summary judgment on that issue. Accordingly, the question is whether Defendants violated clearly established law when they fired him.

The "*sine qua non* of the clearly-established inquiry is fair warning." *Walsh v. Hodge*, 975 F.3d 475, 485–86 (5th Cir. 2020) (citing *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)).

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. [658, 664 (2012)], 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

*Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Here, Hall identifies *Lane v. Franks*; *Davis v. McKinney*; *Howell v. Town of Ball*; and *Anderson v. Valdez*—all decided before he was fired—as clearly establishing his right to free speech. Pl.'s Mem. [75] at 18. Defendants' primary argument in reply quotes language from *Anderson* explaining that "even in qualified-immunity cases, *Lane* often does not alter the analysis required by our post-*Garcetti* case law." Defs.' Reply [77] at 7 (quoting *Anderson*, 845 F.3d at 608).

It is unclear how this quote helps Defendants' argument because before and after *Lane*,

10

numerous Supreme Court and Fifth Circuit decisions gave . . . clear warning that when a public employee engages in speech outside of his employment duties, and the employee directs his speech externally rather than within the chain of command, the employer may not discipline the employee for engaging in the speech in question.

*Hardesty v. Cochran*, 621 F. App'x 771, 780 (5th Cir. 2015) (citing *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 473 (5th Cir. 2014)); *see also Davis*, 518 F.3d at 314, 316 (holding that statements to "external, unrelated entities" were protected where it was "not within [employee's] job function to communicate with outside police authorities" and such communications had not happened in the past); *Charles*, 522 F.3d at 515 (pre-*Lane*, case holding that plaintiff spoke as a citizen when he emailed elected officials outside chain of command about alleged wrongdoing).

*Anderson* says the same and may be the best example among the cases Hall cites. There, the plaintiff worked as a staff attorney for a judge and was blocked from an employment opportunity after notifying an ethics commission that another judge in the district had violated ethics rules—something Anderson learned through his employment. 845 F.3d at 587. The ethics commission was outside Anderson's chain of command, and though he had a general responsibility to report misconduct, reporting the allegations fell beyond his ordinary job duties. *Id.* at 598–60. The Fifth Circuit concluded that the defendant was not entitled to qualified immunity at the Rule 12(b)(6) stage, noting that "[b]y at least 2014, it was clearly established that an employee's speech made 'externally' concerning 'an event that was not within [his or her] job requirements' was entitled to First Amendment protection." *Id.* at 600 (quoting *Cutler*, 767 F.3d at 472–73). Here, Defendants terminated Hall's employment after 2014.

Defendants hope to distinguish *Lane* and *Anderson* with overly particularized factual differences. For example, they say Hall's contact with the Ethics Commission was not "compelled" as in *Lane*. Defs.' Reply [77] at 2. But there is no such First Amendment

requirement as *Anderson* and other cases demonstrate.  845 F.3d at 587 (letter to ethics commission constituted protected speech); *see also Charles*, 522 F.3d at 515 (email to ethics commission was protected speech).

As to *Anderson*, Defendants say the plaintiff there "made a real complaint to a third party outside the control of his employer by filing a judicial performance claim."  Defs.' Reply [77] at 2.  Actually, Anderson "sent a letter to the State Commission on Judicial Conduct" that was "nearly identical" to an earlier letter he sent within the chain of command expressing "that he had 'concerns [about] the possible violation of the Texas Penal Code.'"  *Anderson*, 845 F.3d at 587.  Like Anderson's letter, Hall's email went to an ethics commission that was outside the employer's control and expressed concern about suspected illegal conduct; Defendants fail to explain how Anderson's letter was "real" and Hall's email was not.  *See Charles*, 522 F.3d at 515 (holding that email to ethics commission was protected speech).  Next, Defendants observe that Anderson did not work for the offending judge, whereas Hall reported to Defendants.  But other cases clearly establish that citizen speech can include information learned through the plaintiff's job regarding those for whom he or she works.  *See Lane*, 573 U.S. at 236 (holding that protection of citizen speech "remains true when speech concerns information related to or learned through public employment"); *Howell*, 827 F.3d at 520 (addressing police officer's speech about mayor and police chief).

Defendants' only other argument seems to suggest that Hall engaged in work speech because Defendants never committed any crimes and Hall failed to make a "record . . . as to what the Commissioners actually did."  Defs.' Reply [77] at 8.  To begin, Hall did make a record of what the Commissioners allegedly did; both his deposition and the Advisory Opinion discuss it.  Moreover, the First Amendment protects more than reports about alleged criminal conduct.  *See,*

*e.g.*, *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205,* 391 U.S. 563, 566 (1968) (holding that

teacher's letter to editor regarding school board spending decisions was protected speech).  At

this stage of the proceedings, the individual Defendants are not entitled to summary judgment

based on qualified immunity.[5]

      C.      State-Law Claims

            1.      Mississippi Code Section 11-51-75

      As a threshold defense, Defendants argue that "[a]bsent an appeal" under Mississippi

Code section 11-51-75, "the decision of a municipality cannot be challenged," therefore both the

Airport Commission and the Commissioners are protected from suit.  Defs.' Mem. [71] at 22.

      Section 11-51-75 states that "[a]ny person aggrieved by a judgment or decision of the

board of supervisors of a county, or the governing authority of a municipality, may appeal the

judgment or decision."  Consistent with Defendants' motion, "[s]ection 11-51-75 is an exclusive

remedy" for anyone "aggrieved by a decision of municipal authorities or boards of supervisors."

*Pearl River Cnty. Bd. of Supervisors v. Miss. State Bd. of Educ.*, 289 So. 3d 301, 306 (Miss.

2020).

      But Defendants' argument hits a quick snag because the Airport Commission is not a

municipality.  According to the Mississippi Supreme Court, "municipal authority" includes "the

mayor and board of alderman, city council, or other such form of government."  *City of Madison*

*v. Shanks*, 793 So. 2d 576, 580 (Miss. 2000) (citing *Robinson v. Utils. Comm'n of the City of*

---

[5] Defendants' arguments for finding that Hall engaged in work speech essentially raise questions of fact about the scope of his ordinary duties.  These factual disputes preclude summary judgment based on qualified immunity.  *See, e.g.*, *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (reversing summary judgment based on qualified immunity because plaintiff created genuine issues of material fact regarding underlying conduct).

*Columbus*, 487 So. 2d 827, 829 (Miss. 1986)).  Conversely, entities like "boards and commissions" that are "answerable to some higher authority" are not considered "municipal authorities" under section 11-51-75.  *Robinson*, 487 So. 2d at 829.  And here, the Airport Commission is answerable to a higher authority—the Adams County Board of Supervisors, the mayor, and the board of alderman.  Natchez, Miss., Municipal Code § 14-42, https://library.municode.com/ms/natchez/codes/code_of_ordinances?nodeId=PTIICO_CH14AV; *Robinson*, 487 So. 2d at 829.

Other than quoting section 11-51-75, Defendants neither explore its text nor offer authority suggesting that a commission is a municipality under that section.  At most, Defendants cite definitions from other Mississippi Code titles that they say modify section 11-51-75.  Defs.' Reply [77] at 11–12 (citing Miss. Code Ann. §§ 61-3-3, 17-13-5).  But even assuming these other statutory definitions fit Defendants' argument—which is not apparent—those sections expressly limit their scopes to the chapters in which they are found.  Section 61-3-3, defining "municipality," states that its definition applies "whenever used or referred to in this chapter."  Likewise, section 17-13-5, defining "[l]ocal governmental unit" and "[g]overning authority," applies only "[f]or the purpose of this chapter."  Neither apply to section 11-51-75.  *See Robinson*, 487 So. 2d 827, 829 (rejecting use of another chapter to define "municipal authority" because the "section does not enlarge upon § 11-51-75" and states the "terms are defined for purposes of this chapter").  Because the Airport Commission does not fall under section 11-51-75, Hall's failure to appeal does not preclude his claims.

### 2.    Wrongful-Termination Claims

Hall alleges wrongful termination based on two theories.  First, he asserts the public-policy exception to Mississippi's at-will employment doctrine established in *McArn v. Allied*

14

*Bruce-Terminix Co., Inc.* Am. Compl. [1-1] at ¶¶ 20–22. Second, he claims Defendants violated

sections 11 and 13 of Article III of the Mississippi Constitution and Mississippi Code section 97-

9-127, thereby creating a common-law tort for wrongful termination under *Swindol v. Aurora*

*Flight Sciences Corp.*, 194 So. 3d 847 (Miss. 2016). Pl.'s Mem. [75] at 2.

Defendants counter that these claims are barred under section 11-46-9(1)(d) of the

Mississippi Tort Claims Act (MTCA), which, according them, provides immunity to

municipalities from claims related to discretionary functions like firing an employee. Defs.'

Mem. [71] at 29. Defendants alternatively say Hall never pleaded a *Swindol* claim in his

Complaint. Because Defendants' MTCA argument prevails, the Court need not analyze whether

Hall pleaded a claim under *Swindol*, though he did not.

While the MTCA waives sovereign immunity for some tort claims, Mississippi Code

section 11-46-9(1)(d) states:

> A governmental entity and its employees acting within the course and scope of
> their employment or duties shall not be liable for any claim[] . . . [b]ased upon the
> exercise or performance or the failure to exercise or perform a discretionary
> function or duty on the part of the governmental entity or employee thereof,
> whether or not the discretion be abused.

The test for determining whether discretionary-function immunity applies under the

MTCA has flipflopped since 1999. In that year, the Mississippi Supreme Court adopted a

public-policy-function test in *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256

(Miss. 1999). That test carried two prongs: (1) whether the act involved "an element of choice

or judgment" and (2) "whether the choice involved social, economic, or political policy." *Id.* at

260.

The Mississippi Supreme Court began inching away from that test in *Little v. Mississippi*

*Department of Transportation*, 129 So. 3d 132, 138 (Miss. 2013), before abandoning it in

*Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1112 (Miss. 2014).  But that too caused

problems.  So, in 2018, the Mississippi Supreme Court reversed *Brantley* and re-imposed the

public-policy-function test first adopted in *Jones*.  *See Wilcher v. Lincoln Cnty. Bd. of

Supervisors*, 243 So. 3d 177, 183 (Miss. 2018) (re-adopting *Jones* public-policy-function test).

Under *Jones*—i.e., before *Brantley*—both state and federal courts in Mississippi held that

employment decisions like hiring and firing are discretionary functions and therefore immune

from tort claims under section 11-26-9(1)(d).  *See, e.g.*, *Patton v. Hinds Cnty. Juvenile Det. Ctr.

(Henley-Young)*, No. 3:10-CV-138-TSL-LRA, 2012 WL 5287068, at *2 (S.D. Miss. Oct. 23,

2012) (finding termination decision immune under public-policy-function test); *accord Suddith

v. Univ. of S. Miss.*, 977 So. 2d 1158, 1179 (Miss. Ct. App. 2007).

Hall apparently recognizes that his claims would not survive under the *Jones* public-

policy-function test.  He therefore argues that *Wilcher* "fundamentally remade" that test.  Pl.'s

Mem. [75] at 24.  According to Hall, *Wilcher* offers something new because it "overruled *Pratt

v. Gulfport-Biloxi* [*Regional*] *Airport Authority*, 97 So. 3d 68, 75 (Miss. 2012)" where the test

had been applied and adopted "Chief Justice Waller's dissent from that case."  *Id.* at 34 n.7.

The distinction Hall suggests fails to support his position.  It is certainly true that *Wilcher*

overruled the *Pratt* majority and agreed with Chief Justice Waller's dissent.  But context matters.

The *Wilcher* court concluded that *Pratt* "misapplied" the *Jones* public-policy-function test by

"stretch[ing] the bounds of 'policy' beyond credulity."  *Wilcher*, 243 So. 3d at 188.

Significantly, the *Pratt* decision held that placement of non-slip tape on stairs involved economic

policy.  *Pratt*, 97 So. 3d at 75.  As the Chief Justice noted in dissent, such conduct fails to

"distinguish between real policy decisions implicating governmental functions and simple acts of

negligence which injure innocent citizens."  *Id.* at 76 (quoting *Dancy v. E. Miss. State Hosp.*, 944

16

So. 2d 10, 17–18 (Miss. 2006)).  Thus, the *Wilcher* court did not depart from *Jones*; the *Pratt* court did.

And unlike the placement of non-slip tape, employment decisions do implicate policy. Not surprisingly, every court to apply the public-policy-function test to an employment decision in Mississippi—both before and after *Wilcher*—has found the defendant immune under section 11-46-9(1)(d).  *See Mathews v. City of Booneville*, No. 1:19-CV-137-DMB-DAS, 2020 WL 2615912, at *9 (N.D. Miss. May 22, 2020) ("Because '[e]mployment decisions are discretionary in Mississippi,' tort claims premised on the termination of an employee fall under this exemption and are subject to dismissal."  (citing *Coleman v. Miss. Dep't of Marine Res.*, No. 1:16-cv-289, 2016 WL 5794772, at *5–6 (S.D. Miss. Oct. 4, 2016); *Carr v. City of Yazoo City*, No. 5:10-cv-95, 2012 WL 1556501, at *2 (S.D. Miss. May 1, 2012)); *Epps v. Hazlehurst City Sch. Dist.*, No. 3:17-CV-918-LG-LRA, 2018 WL 11152179, at *3 (S.D. Miss. Nov. 2, 2018) (same and collecting cases); *Suddith*, 977 So. 2d at 1179.  This Court agrees, especially given the position Hall held.  As Director of Aviation, Hall was the Airport Commission's top administrator, and the discretionary decision to terminate his employment implicated economic-policy issues. Summary judgment is granted as to the state-law tort claims.[6]

> 3.    Mississippi Whistleblower Protection Act

Hall also brings a claim under the Mississippi Whistleblower Protection Act, Miss. Code Ann. § 25-9-173, asserting that he was fired for emailing the Ethics Commission to ask whether

---

[6] Hall's other argument on this point cites two cases where courts did not apply section 11-46-9(1)(d) to *McArn* claims:  *Warnock Engineering, LLC v. Canton Municipal Utilities*, No. 3:17-CV-160-HSO-JCG, 2018 WL 6729991, at *11 (S.D. Miss. Dec. 21, 2018), *aff'd sub nom. Warnock Engineering, L.L.C. v. Canton Municipal Utilities*, 832 F. App'x 914 (5th Cir. 2021), and *East Mississippi State Hospital v. Callens*, 892 So. 2d 800, 821–22 (Miss. 2004).  While Hall's observation is correct, neither court addressed section 11-46-9(1)(d), and Judge Ozerden noted in *Warnock* that the defendant offered no real arguments.  2018 WL 6729991, at *11.

the Commissioners' contracts were illegal.  Section 25-9-173(1) states that "[n]o agency shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the employee testified or provided information to a state investigative body whether or not the testimony or information is provided under oath."  Further, section 25-9-173(2) entitles "[a]ny person who is a whistleblower, as defined in [s]ection 25-9-171, and who as a result of being a whistleblower has been subject to workplace reprisal or retaliatory action" to remedies provided under the statute.

Defendants argue that Hall was not a "whistleblower" because he never "reported" "improper governmental action" to a "state investigative body" and no investigation ever followed.  Defs.' Mem. [71] at 25–27.  They craft this argument by selectively—and misleadingly—quoting the statutory definition for a "[w]histleblower."  Miss. Code Ann. § 25-9-171(j).  As they note, section 25-9-171(j) defines the term to include "an employee who in good faith reports an alleged improper governmental action to a state investigative body, initiating an investigation."  Defs.' Mem. [71] at 27 (quoting Miss. Code Ann. § 25-9-171(j)).  But they fail to mention the very next sentence, which states, "For the purposes of Sections 25-9-171 through 25-9-177, the term 'whistleblower' *also* means an employee who in good faith *provides information to a state investigative body*."  Miss. Code Ann. § 25-9-171(j) (emphasis added).

This alternative definition of "whistleblower" applies because Hall's claim falls under Mississippi Code section 25-9-173.  Thus, according to the statutory text, claims under section 25-9-173 do not require a "report" of "improper governmental action" that leads to an investigation; merely "provid[ing] information" in good faith—a much broader term—will suffice.  Miss. Code Ann. § 25-9-171(j).  Hall's email provided information to the Ethics

Commission, which is an "investigative body" listed in section 25-9-171(g). Hall has created a question of fact that precludes summary judgment.[7]

### 4. Breach-of-Contract Claims

Hall alleges that Defendants breached his employment contract because they failed to follow the disciplinary policies stated in their employee handbook before terminating his employment. Am. Compl. [1-1] ¶¶ 34–36; Pl.'s Mem. [75] at 28. Defendants urge the Court to dismiss the claim for three reasons: (1) Hall failed to plead breach of contract in his complaint; (2) the employee handbook was never finished or approved by the Board; and (3) the handbook includes a disclaimer reserving Hall's at-will status. Defs.' Reply [77] at 8–9.

Defendants' first argument is doubtful because the Complaint mentions the failure to follow the grievance procedure, even if the cause of action was imprecisely pleaded. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (holding that "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"). Defendants' second argument is irrelevant because even assuming a question of fact on whether the handbook was adopted, the handbook preserved Hall's at-will status and therefore precluded a breach-of-contract claim based on that handbook.

Under Mississippi law, "when employers distribute handbooks or policy manuals, they may create contractual obligations that override the at-will nature of an employment relationship." *Crawford v. Bannum Place of Tupelo*, 556 F. App'x 279, 283 (5th Cir. 2014)

---

[7] After Hall observed that Defendants cited the wrong definition, Defendants refused to concede the obvious and instead responded: "Simply put, there was no report of illegal activity and no investigation by the Mississippi Ethics Commission." Defs.' Reply [77] at 3 n.2. This reply fails to address Hall's argument. Moreover, even if Hall had never contacted the Ethics Commission at all, he could still qualify as a whistleblower if he was "believed to have reported alleged improper governmental action." Miss. Code Ann. § 25-9-171(j).

(citing *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356, 361 (Miss. 1992)).  If an employer distributes such handbooks, "the employer must strictly adhere to the terms set forth in the handbook."  *Lee v. Golden Triangle Plan. & Dev. Dist., Inc.*, 797 So. 2d 845, 848 (Miss. 2001).  But if the handbook contains an "express disclaimer" that preserves the at-will employment relationship, the obligation is nullified.  *Bobbitt*, 603 So. 2d at 362.

Here, the handbook Hall claims Defendants breached included an express disclaimer: "Employees of the Airport Commission are employed on an at-will basis, and the Airport Commission retains the right to terminate an employee at any time."  Employee Handbook [74-4] at 4.  This statement preserves Hall's at-will employment status.  *See Bobbitt*, 603 So. 2d at 362; *see also Johnson v. City of Shelby*, 642 F. App'x 380, 383 (5th Cir. 2012) ("[I]f the employer has explicitly characterized an employment relationship as at will, an employee handbook outlining disciplinary procedures does not modify the relationship.") (citing *Hartle v. Packard Elec.*, 626 So. 2d 106, 109 (Miss. 1993)).  So, even if approved and distributed, the handbook did not modify Hall's at-will status.  *Id.*  Summary judgment is therefore granted as to Hall's breach-of-contract claims.

5.    Rule 11 Sanctions

Defendants' motion and reply brief include a demand for sanctions under Federal Rule of Civil Procedure 11.  First, Hall did not violate Rule 11 anymore than Defendants did.  Second, Defendants failed to comply with Rule 11(c)(2)'s procedural requirements.  The request for this is denied.

IV.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motion for Summary Judgment [70] is

granted as to Hall's wrongful-termination and breach-of-contract claims, and it is denied as to his claims under § 1983 and the Mississippi Whistleblower Protection Act.  No later than February 25, 2021, the parties shall contact Courtroom Deputy Shone Powell to set this matter for a status conference via Zoom.

**SO ORDERED AND ADJUDGED** this the 19th day of February, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE